IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KEVIN JOSEPH CARR,

                           Plaintiff,        Civil Action No.
                                        3:17-CV-0954 (GLS/DEP)

       v.

THE CITY OF NORWICH and
BRANDON M. CLARKE,[1]

                           Defendants.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

OFFICE OF RONALD R. BENJAMIN    RONALD R. BENJAMIN, ESQ.
P.O. Box 607
126 Riverside Drive
Binghamton, New York 13902-0607

FOR DEFENDANTS:

JOHNSON & LAWS, LLC              GREGG T. JOHNSON, ESQ.
648 Plank Road                      APRIL J. LAWS, ESQ.
Suite 204                          COREY A RUGGIERO, ESQ.
Clifton Park, New York 12020       LORAINE CLARE JELINEK,
                                     ESQ.

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

---

[1]     Officer Clarke was sued in this action by plaintiff as "Brandon M. Clark." Dkt. No. 2. From his affidavit, however, it appears that the correct spelling of his last name is "Clarke." Dkt. No. 46-10. The court clerk will be respectfully directed to modify the court's records to reflect the true spelling of Officer Clarke's name, and plaintiff's complaint will be deemed to have been amended to reflect this modification.

## ORDER, REPORT, AND RECOMMENDATION

This is a civil rights action brought by plaintiff Kevin Joseph Carr, pursuant to 42 U.S.C. § 1983, against Norwich City Police Officer Brandon M. Clarke, both individually and in his official capacity, and the City of Norwich ("City"). The only claims remaining in the action are an excessive force cause of action asserted against Officer Clarke and a municipal liability claim against the City of Norwich, both stemming from an encounter between plaintiff and Officer Clarke.

Currently pending before the court is a motion brought by defendants seeking the entry of summary judgment dismissing plaintiff's remaining claims. In their motion, defendants argue that plaintiff cannot prove his claims against Officer Clarke and the City, and, in the alternative, Officer Clarke is entitled to qualified immunity. For the reasons set forth below, I recommend that defendants' motion for summary judgment be granted in part, to the extent that plaintiff's claims against the City should be dismissed, but that defendants' motion for summary judgment otherwise be denied based upon the existence of genuine issues of material fact that must be determined at trial.

I.      BACKGROUND[2]

---

[2]      In light of the procedural posture of the case, the following recitation is derived

On the afternoon of August 3, 2016, staff at the Guernsey Memorial Library ("Library") received at least two complaints from members of the public regarding plaintiff, who, at the time, was homeless and seated on a park bench outside the Library. Dkt. No. 46-2 at 3-4; Dkt. No. 46-8 at 18-20; Dkt. No. 46-10 at 3. Specifically, those complaints alleged that plaintiff was intoxicated, sleeping on the bench outside the Library, harassing patrons, and refusing to leave the premises. Dkt. No. 46-2 at 3, 19.

Following receipt of those complaints, two library employees, Susan Morehead and Laura Mandell, approached plaintiff in an attempt to convince him to leave the Library's property. Dkt. No. 46-2 at 4-5, 19. Ms. Morehead indicated that she observed a liquor bottle under the bench, presumably belonging to the plaintiff. *Id.* at 5. When plaintiff failed to move from the bench, the Norwich Police Department was contacted. *Id.* at 6; Dkt. No. 46-10 at 3. Upon the arrival of law enforcement representatives, Library personnel requested that plaintiff be arrested for trespassing. Dkt. No. 46-10 at 3; Dkt. No. 46-12 at 2.

Officer Clarke was the first officer to arrive at the Library, followed by

---

from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

his supervisor, Detective Michael Purdy.[3] Dkt. No. 46-10 at 3; Dkt. No. 46-12 at 3. As Officer Clarke approached plaintiff, he requested in a loud voice that plaintiff "stand up, turn around and put [his] hands behind [his] back" and further stated that plaintiff was under arrest. Dkt. No. 46-10 at 3; *see also* Dkt. No. 46-2 at 29. Plaintiff looked in Officer Clarke's direction but did not follow the order, resulting in Officer Clarke repeating the order. Dkt. No. 46-10 at 3; *see also* Dkt. No. 46-2 at 29-30. Plaintiff responded to the second order with some form of vulgarity. Dkt. No. 46-10 at 3; *see also* Dkt. No. 46-2 at 30. Plaintiff followed the vulgarity with an inquiry as to why he was being arrested. Dkt. No. 46-5 at 22; Dkt. No. 46-6 at 17. Officer Clarke then repeated his command for a third time.[4] Dkt. No. 46-10 at 3.

After plaintiff refused the third command, Officer Clarke informed Carr that he would be additionally charged with resisting arrest and pepper sprayed. Dkt. No. 46-10 at 3-4; Dkt. No. 46-12 at 3; *see also* Dkt. No. 46-2 at 30-31. Plaintiff again asked. "[w]hy" and "[w]hat for" in response to the

---

[3]     Detective Purdy was originally named as a defendant in plaintiff's complaint. Dkt. No. 2. By text order issued on September 26, 2018, however, Senior District Judge Gary L. Sharpe ordered dismissal of all claims against defendant Purdy. Dkt. No. 38.

[4]     In his affidavit, Officer Clarke states that plaintiff followed the vulgarity with "you can't do this" or "you can't arrest me". Dkt. No. 46-10 at 3; *see also* Dkt. No. 46-2 at 30, 85.

pepper spray statement.[5] Dkt. No. 46-6 at 17. Officer Clarke then administered a one-second burst of pepper spray to plaintiff's face and approached Carr's left side in an attempt to handcuff him. Dkt. No. 46-10 at 4; Dkt. No. 46-12 at 3; *see also* Dkt. No. 46-2 at 31. At the same time, Officer Purdy approached plaintiff's right side. Dkt. No. 46-12 at 3.

Officer Clarke asserts that at this point, plaintiff pulled his left arm away and ripped the handcuffs from the officer's grip. Dkt. No. 46-10 at 4; *see also* Dkt. No. 46-2 at 31-32. Eyewitnesses to the incident, however, characterize plaintiff's movement as an attempt to wipe his face with his left hand. *See, e.g.*, Dkt. No. 46-5 at 25; Dkt. No. 46-6 at 17. Officer Clarke then took plaintiff to the ground, handcuffed, and searched him without any further incident. Dkt. No. 46-10 at 4; Dkt. No. 46-12 at 3.

As a result of his encounter with Officer Clarke, plaintiff suffered a one-inch laceration above his left eye. Dkt. No. 46-2 at 32; Dkt. No. 46-10 at 4. The Norwich Fire Department was called to assess plaintiff's injury, and plaintiff was subsequently taken to the Chenango Memorial Hospital for treatment. Dkt. No. 46-2 at 32-35; Dkt. No. 46-10 at 4. Plaintiff was held overnight in the hospital due to his state of intoxication. Dkt. No. 46-

---

[5]     According to Officer Clarke, plaintiff responded and said that the officer would not pepper spray him. Dkt. No. 46-10 at 4.

10 at 4. While in the hospital, plaintiff was issued an appearance ticket

charging him with resisting arrest and trespass. *Id*. at 4-5.

The following day, Officer Clarke returned to the hospital for the

purpose of taking a photograph of plaintiff's laceration. Dkt. No. 46-10 at 5.

Plaintiff, however, refused Officer Clarke's request for permission to take

that photograph. *Id.*

The Norwich Police Department Chief of Police, Rodney Marsh,

conducted an internal investigation following the incident. Dkt. No. 47 at 2.

During the course of that investigation, Chief Marsh reviewed incident

reports, prior tickets issued to plaintiff, and records pertaining to the arrest.

*Id.* In total, Chief Marsh reviewed documents from twenty-five separate

encounters between plaintiff and law enforcement personnel between

February 8, 2015 and August 2, 2016. *Id.* Following the investigation,

Chief Marsh also concluded that Officer Clarke followed Norwich Police

Department policies when making the arrest, including using an

appropriate amount of force to subdue the plaintiff. *Id.* at 4-5.

Plaintiff disputes that Officer Clarke followed Norwich Police

Department protocol in their encounter, though he admits that the Norwich

Police Department has established protocols for the use of force, and that

Officer Clarke was trained in those protocols. Dkt. No. 48 at 8. Plaintiff was

eventually tried for resisting arrest and trespass, and was ultimately convicted following a jury trial on all counts. Dkt. No. 48 at 4; *see* Dkt. No. 46-2; *see also* Dkt. No. 46-9 (accusatory instruments).

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 14, 2017 by the filing of a complaint in New York State Supreme Court, Chenango County. Dkt. No. 2. Defendants subsequently removed the action to this court on August 29, 2017. Dkt. Nos. 1, 2. In his complaint, plaintiff named as defendants the City of Norwich, and Office Brandon Clarke and Detective Michael Purdy. Plaintiff's complaint asserted an excessive force claim, arising from allegations that Officer Clarke caused substantial injury to plaintiff during an arrest. Dkt. No. 2 at 3. The complaint further alleged that the City of Norwich is responsible for the conduct of Officer Clarke, both under section 1983 and for negligence, and is thereby liable as well. *Id.*

Although defendants initially interposed an answer, *see* Dkt. No. 7, on February 5, 2018, defendants filed a motion for partial dismissal of plaintiff's claims. Dkt. No. 12. On September 26, 2018, Senior District Judge Gary L. Sharpe dismissed both plaintiff's negligence claim against the City and all claims against defendant Purdy.[6]  Dkt. No. 38.

---

[6]    Plaintiff's negligence claim against the City was dismissed based upon plaintiff's

Following the close of discovery, on October 30, 2018, defendants moved for summary judgment seeking dismissal of plaintiff's excessive force claim against Officer Clarke and of plaintiff's *Monell*[7] cause of action against the City. Dkt. Nos. 46, 47. Plaintiff has responded in opposition to defendants' motion, Dkt. No. 48, and defendants have submitted a reply memorandum in further support of their motion, Dkt. No. 50. Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Sufficiency of Plaintiff's Local Rule 7.1(a)(3) Statement

To assist the court in framing the issues presented in connection with a motion for summary judgment, the court's local rules require that such a motion contain a statement of material facts which, the moving party contends, are not genuinely disputed. N.D.N.Y. L.R. 7.1(a)(3). The opposing party, in turn, is required to respond to the moving party's statement of material facts. *Id*. Addressing the duty to respond, the rule

---

failure to submit to an examination as required by section 50-h of New York's General Municipal Law. *See* Dkt. No. 38.

[7]      *Monell v. Dep't of Social Srvs*., 436 U.S. 658 (1978).

provides as follows:

> The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions and matching number of paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. <u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>.

N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Courts in this district have routinely enforced this rule in the event of a non-movant's failure to properly respond to a Local Rule 7.1(a)(3) Statement. *See, e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases).

In this instance, while plaintiff sharply disputes certain facts set forth in defendants' Local Rule 7.1(a)(3) Statement, the denials are not supported by citations to the record as required by the court. Plaintiff's counsel should now be well aware of his obligation under Local Rule 7.1(a)(3). *See, e.g.*, *Towner v. Cty. of Tioga*, No. 15-CV-0963 (N.D.N.Y. filed 8/5/2015), at Dkt. No. 167 at 17-20; *Bradford v. Norwich City Sch. Dist.*, 54 F. Supp. 3d 177, 180, 184 (N.D.N.Y. 2014) (Suddaby, C.J.). This failure, however, does not affect the court's analysis particularly in light of the preference and desirability of resolving litigated matters based upon

relative merit, rather than on the basis of a procedural or technical default, and the fact that the defendants do not seek summary judgment on the basis of this shortcoming. *See* Dkt. No. 50; *see, e.g., Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993); *Meehan v. Snow*, 652 F. 2d 274, 277 (2d Cir. 1981).

B.    <u>Legal Standard Governing Motions for Summary Judgment</u>

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of

demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Emp'rs' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

C.    Plaintiff's Excessive Force Claim Against Officer Clarke

In his complaint, plaintiff asserts a single cause of action against Officer Clarke, claiming that during the encounter on August 3, 2016,

11

Officer Clarke used excessive force in arresting plaintiff, causing immediate injury and permanent neurological damage. Dkt. No. 2 at 2-3. In support of their motion, defendants argue that no reasonable factfinder could conclude that the measure of force applied by defendant Clarke was objectively unreasonable under the circumstances presented to him on the day in question. Dkt. No. 46-14 at 17-20.

            1.    <u>Legal Standard Governing Excessive Force Claims</u>

Plaintiff's claim of excessive force during the course of his arrest is properly analyzed under the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985); *accord, Graham v. Connor*, 490 U.S. 386, 395, 490 U.S. at 395 (1989) ("Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment[.]"). A police officer's use of force is excessive, in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [his or her], without regard to [his or her] underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397).

Application of this test is case specific and requires a balancing of the "nature and quality of the intrusion on the plaintiff's Fourth Amendment interest against countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). When performing a Fourth Amendment excessive force analysis, a court must consider (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See id.*; *see also Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015); *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). In making the excessive force inquiry, a court must evaluate the circumstances from the perspective of a reasonable officer at the time of the incident, rather than through the 20/20 lens of hindsight, taking into consideration that law enforcement officials are often forced to make split second judgments during the course of events that are rapidly evolving. *Tracy*, 623 F.3d at 96; *see Brown*, 798 F.3d at 100. A grant of summary judgment against plaintiff is only appropriate where no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004); *see Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir.

2015) (" '[G]ranting summary judgment against a plaintiff on [an excessive force claim] is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable[.]' ").

2.    Analysis

The first factor to be considered is the nature and severity of plaintiff's crime. *See Tracy*, 623 F.3d at 96. Plaintiff, who is homeless and was, by all accounts, heavily intoxicated at the time leading up to his arrest, is accused of refusing to leave a bench on Library property. *See, e.g.,* Dkt. No. 46-2 at 9; *see also id.* at 22. The initial charge plaintiff faced, before matters escalated, involved a trespassing—a violation under New York law. *See* N.Y. Penal Law § 140.05. That offense is considered a petty offense under New York law. *See* N.Y. Criminal Procedure Law § 1.20(39) (McKinney 2018).

Despite the innocuous nature of the crime of trespass, in their moving papers, defendants assert that based upon their experience an intoxicated person is likely to disobey commands, attempt to flee from police presence, and be physically aggressive with law enforcement officers. *See, e.g.,* Dkt. No. 46-12 at 2. During oral argument, defendants pressed the argument that plaintiff posed a danger to the Library's patrons, including children and families. A reasonable factfinder could disagree,

14

however, and find that given his condition and the presence of two officers, plaintiff posed no threat to the officers or the public.

The second factor, which looks to whether the suspect poses an immediate threat to the safety of the officer or others, involves some more difficult questions. *See Tracy*, 623 F.3d at 96. These questions include whether or not Officer Clarke utilized his police training in de-escalating the situation, how exactly plaintiff was responding, and what information Officer Clarke possessed regarding the plaintiff prior to the day in question.

Whether Officer Clarke acted in accordance with his training, which he describes in detail in his affidavit, is a question upon which reasonable factfinders could differ. Officer Clarke contends that he utilized "verbal judo" in order to de-escalate the situation. Dkt. No. 46-10 at 2; *see also* Dkt. No. 46-2 at 24. Officer Clarke indicated that he has attended numerous in-depth trainings on this and other police matters. Dkt. No. 46-10 at 2. "Verbal judo" is intended as a method of calming a person into a conversation. *Id.*

Plaintiff, in contrast, contends that Officer Clarke did not use his training and therefore engaged in an unreasonable use of force. Dkt. No. 48 at 8. Plaintiff argues that Officer Clarke never engaged in a civil

15

conversation, a fact that finds support in eyewitness testimony, as well the testimony of Officer Clarke, suggesting that Officer Clarke initiated the encounter and throughout it continually yelled orders at plaintiff, rather than attempting a civil conversation. *See* Dkt. No. 46-10 at 3-4 (listing the commands provided by defendant and resulting in the deployment of pepper spray). Reasonable factfinders could come to different conclusions as to whether a conversation took place, which led Officer Clarke to conclude that his "verbal judo" was not working, whether this justified an appropriate increase in the force continuum, and ultimately whether Officer Clarke utilized his training in a reasonable way. This is a fact which is in genuine dispute, as there is evidence in the record which supports varying conclusions, and is material to the reasonableness analysis under the Fourth Amendment. *See Anderson*, 477 U.S. at 248.

Further, how acquainted Officer Clarke was with the plaintiff prior to this incident and its impact on Officer Clarke's calculus also goes to the ultimate reasonableness of his conduct. *See, e.g.*, Dkt. No. 46-2 at 28. Reasonable factfinders could differ on whether or not the nature of Officer Clarke's contacts with plaintiff, as well as what he had heard from other officers in their contacts with plaintiff, impacted the reasonability of his actions. In the affidavits of Officer Clarke and Chief of Police Marsh, it is

16

indicated that plaintiff had had multiple confrontations with the Norwich

Police Department, and that the City of Norwich is a small town. Dkt. No.

46-10 at 3; Dkt. No. 46-11 at 2. Plaintiff argues that those encounters

should have indicated to Officer Clarke that plaintiff was neither dangerous

nor a threat to Officer Clarke's safety. Dkt. 48 at 8. Taking this fact in a

light most favorable to plaintiff, I find that reasonable minds could differ as

to the reasonableness of Officer Clarke's conduct, and the issue is

inappropriately resolved on summary judgment. *See Anderson*, 477 U.S.

at 248.

The question of whether plaintiff was actively resisting or attempting

to evade arrest presents not only issues of material fact in genuine dispute

but also, according to defendants, implicates issue preclusion. *See Tracy*,

623 F.3d at 96; *see also* Dkt. No. 46-14 at 16; Dkt. No. 50 at 5 (citing Dkt.

No. 46-9). Plaintiff was convicted of resisting arrest based upon his

encounter at the Library. *See* Dkt. No. 48 at 5; *see also* Dkt. No. 46-9 at 2.

However, this fact alone does not justify the use of excessive force. *Tracy*,

623 F.3d at 99-100. While it may justify some use of physical force against

the plaintiff, it does provide a license for an officer to engage

unconstitutional conduct. *Id.*

I note that while plaintiff was accused and convicted of resisting

17

arrest, there is no evidence that actual physical force was used or threatened by plaintiff, other than plaintiff raising his hand, according to eyewitnesses, or attempting to snatch away handcuffs, as Officer Clarke and Detective Purdy contend.[8]  A reasonable factfinder could conclude that based upon the conduct leading to Officer Clarke's use of force, plaintiff did not endanger either himself or others in the vicinity.

Ultimately, the issue to be determined is whether defendant Clarke's actions were objectively reasonable, and proportional to the situation confronted. Eyewitnesses to the incident paint a far different picture than that which is set forth in Officer Clarke's affidavit. According to Joshua Barker, who was across the street at the time, the two officers were talking to the plaintiff, and at one point, Officer Clarke picked plaintiff up by his shirt collar and threw him to the ground. Dkt. No. 46-4 at 42. During his deposition, Barker testified as follows:

> Q.   What did you see happen?
>
> A.   Just the officers were talking to him. I couldn't

---

[8]      Defendants argue that because he was convicted of resisting arrest plaintiff is estopped from asserting that he did not physically resist arrest. The statute under which plaintiff was convicted, however, provides only that "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30. It is well-established under New York law that to be convicted under that section plaintiff need only to have engaged in some conduct with the intent of preventing a lawful arrest. *People v. Stevenson*, 31 N.Y. 2d 108, 112 (1972). The conduct that can lead to such a conviction may be either verbal, physical, or both. *Id*.

hear . . . them, but the officers were talking to him, and all of a sudden the officer grabbed him by the shirt collar and then throws him down on the ground.

* * *

Q.    At any time before the officer put his hands on [plaintiff], did [plaintiff] try to strike the officer?

A.    No.

Q.    Did he offer any resistance to the officer?

A.    Not that I could hear, no.

Q.    What about what you can see?

A.    From what I saw, he was just sitting on the bench.

Q.    So he picked him up off the bench and threw him to the ground?

A.    Yes.

Dkt. No. 46-4 at 41-42. Sister Mary Bartholomew Biviano, who also witnessed the incident, testified as follows:

Q.    Did there come a time where one of the officers grabbed [plaintiff]?

A.    Yes.

Q.    And how soon after arriving to the scene did the officer grab [plaintiff]?

A.    He went up to him, he bent down, he was talking, and then all of a sudden I just saw his

19

hand grab him from the back and slam him
down and I heard a loud crack (indicating).

* * *

Q.    Did you just raise the back of your collar?

A.    I did, but he grabbed him (indicating). He
grabbed him and just slammed him right
down. And as I said, I heard a large snap - -
crack. And it was loud. Because I remember
saying, 'Oh, my God. That was not
necessary.' . . .

* * *

I was so stunned the way it happened,
and I said - - and there were people around
me and my cousin was with me because she
was waiting until I got on the bus, and I looked
in horror and I said, '[m]y gosh, that should not
have ever taken place that way. It should have
never happened that way.'

Dkt. No. 46-3 at 17-18. Another witness, Jhenna Wood, described what

transpired following the conversation between Officer Clarke and the

plaintiff, as follows:

Q.    Did anything happen after this back-and-forth
exchange between Officer Clark and
[plaintiff]?

A.    Yes.

Q.    What happened?

A.    Mr. Clark reached, grabbed his mace. He had
maced [plaintiff]. [Plaintiff] then dr[e]w his

20

hand up to wipe his face (indicating).

Q.    Which hand did he raise?

A.    I believe it was his right hand. And as he
      reached up to wipe his face, Officer Clark
      grabbed his arm. I want to say he had both of
      his hands on [plaintiff], and just []all of a
      sudden picked him right up and he just like
      body-slammed him. And [plantiff's] forehead
      hit the corner of the concrete and his body
      went dead. It just went lifeless.

Dkt. No. 46-5 at 25. A fourth witness, Mark Fuller, characterized the

relevant events as follows:

Q.    How would you describe the interaction that
      they had?

A.    The gentlemen asked him to stand up and
      turn around. The gentlemen, meaning Clark,
      asked him to stand up and turn around and
      put his hands behind his back. [Plaintiff] said,
      'Why?' Or, 'What for?' The gentlemen
      repeated to him maybe two or three times.
      [Plaintiff] gave the same reply, 'Why?' Or,
      'What for?' He then said, 'If you don't get up
      and turn around and put your hands behind
      your back, I'm going to mace you.' Again,
      [plaintiff] said, 'Why?' 'What for?' He had
      already had the mace out on his hip, shaking
      it. He maced [plaintiff], He put back. [Plaintiff]
      put his hand up to wipe his face. When he put
      his hand up to wipe his face, the officer
      grabbed his arm, snatched him up off the
      bench, and face-planted him onto the
      concrete.

Q.    When you say he slammed him, did he use

21

both hands?

A.    Excessive force. Yes, both hands. Excessive
force.

Dkt. No. 46-6 at 17.

Defendants argue that no reasonable factfinder could conclude

excessive force was used during the course of plaintiff's arrest since the

only reported injury suffered by the plaintiff was a one-inch laceration. The

extent of the plaintiff's injury, however, is not necessarily dispositive. "If the

force used was unreasonable and excessive, the plaintiff may recover

even if the injuries inflicted were not permanent or severe." *Hershey v.

Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013) (quoting *Robison v.

Via*, 821 F. 2d 913, 924 (2d Cir. 1987)); *see also Jennings v. Decker*, 17-

CV-0054, 2019 WL 251781, at *8 (N.D.N.Y. Jan. 17, 2019) (observing that

"multiple courts in this Circuit have held at the summary judgment stage

'that even minor injuries, including scrapes and bruises, can support an

excessive-force claim.' ").

When considering the various disparate accounts of the relevant

events and the measure of force applied by Officer Clarke, it is not

possible to conclude that no reasonable factfinder could determine the

amount of force used by Officer Clarke was objectively unreasonable. It is

for a jury to determine whether it was objectively reasonable for Officer

Clarke to interpret plaintiff's actions as actively resisting and placing him in

harm's way, and if so, whether the amount of force used was proportionate

and objectively reasonable under the circumstances. Accordingly, I

recommend against the entry of summary judgment dismissing plaintiff's

excessive force claim against Officer Clarke.

     C.    Qualified Immunity

    Defendants argue, in the alternative, that if plaintiff can establish an

excessive force claim under the Fourth Amendment defendant Clarke is

nonetheless entitled to qualified immunity from suit. Dkt. No. 46-14 at 22-

26. In opposition, plaintiff argues that there are material issues of fact

which preclude summary judgment on the issue of qualified immunity. Dkt.

No. 48 at 12-13.

     1.    Legal Standard Governing Qualified Immunity

    "Qualified immunity shields government officials from civil damages

liability unless the official violated a statutory or constitutional right that

was clearly established at the time of the challenged conduct." *Reichle v.*

*Howards*, 566 U.S. 658,664 (2012); *see also Pearson v. Callahan*, 555

U.S. 223, 231 (2009); *Sudler v. City of New York*, 689 F.3d 159, 174 (2d

Cir. 2012). The law of qualified immunity seeks to strike a balance

between "the need to hold public officials accountable when they exercise

power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). Summary judgment, however, is inappropriate if there remain facts in dispute that are material to a determination of reasonableness. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (citing *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at

issue violated a constitutional right, and if so, "whether that right was 'clearly established' at the time of the events at issue." *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011) (quoting *Saucier*, 533 U.S. at 194, 201); *accord*, *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks and alterations omitted).

However, "[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted). This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Second Circuit has even acknowledged that police officers may be afforded "an extra layer of protection" in excessive force cases because of the "hazy border between excessive and acceptable force". *Stephenson v.*

25

*Doe*, 332 F.3d 68, 77-78 (2d Cir. 2003). Even with this extra layer of protection however, summary judgment is still inappropriate where a material fact is in dispute. *See Thomas*, 165 F.3d at 143.

>    2.    Analysis

As is set forth above, there are genuine material facts in dispute as to the objective reasonableness of Officer Clarke's conduct under the circumstances. While the right to be free from the use of excessive force under the Fourth Amendment is clearly established, a question remains whether a reasonable officer under the circumstances that confronted defendant Clarke would believe that his conduct violated that clearly established right. As such, the court is unable to determine at this juncture whether reasonable officers would disagree as to lawfulness of Officer Clarke's conduct. *Higazy*, 505 F.3d at 169-70. In recognizing the "hazy border between excessive and acceptable force," the court finds that it would inappropriate at this juncture, until the disputed facts are resolved, to conclude that defendant is entitled to qualified immunity. *See Thomas*, 165 F.3d at 143; *see also Stephenson*, 332 F.3d at 77-78.

>    D.    The City's Liability

In his complaint, plaintiff asserts a *Monell* claim against the City as the public entity responsible for the conduct of Officer Clarke, who

allegedly violated plaintiff's constitutional rights. *See generally* Dkt. No. 2.

In their motion, defendants argue that plaintiff cannot demonstrate the

existence of a basis for holding the City liable for Officer Clarke's actions

under *Monell*. Dkt. No. 46-14 at 20-22.

                1.    Legal Standard Governing a Municipality's Liability Under
                       Section 1983

A municipal entity may be held accountable for a constitutional

violation that has occurred pursuant to "a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by [the

municipality's] officers . . . [or] pursuant to governmental 'custom' even

though such a custom has not received formal approval through the body's

official decisionmaking channels." *Monell*, 436 U.S. at 690-91. Municipal

liability can be established in various ways, including through "proof of an

officially adopted rule or widespread, informal custom[] [demonstrating] 'a

deliberate government policy or failing to train or supervise its officers.'"

*Bruker v. City of N.Y.* 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting

*Anthony v. City of N.Y.*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may

also show that the allegedly unconstitutional action was "taken or caused

by an official whose actions represent an official policy," *Jeffes v. Barnes,*

208 F.3d 49, 57 (2d Cir. 2000), or when municipal officers have

acquiesced in or condoned a known policy, custom, or practice that

violates federal law. *Amnesty Am.*, 361 F.3d at 126; *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

A municipality's failure to act "satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices [is] so likely to result in a deprivation of federal rights[] that the municipality . . . can be found deliberately indifferent to the need." *Reynolds*, 506 F.3d at 192 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). Assuming a plaintiff can prove that a municipality has acquiesced to a pattern of conduct that may result in a violation of federal law, "for liability to attach . . .[,] the identified deficiency . . . must be closely related to the ultimate injury." *City of Canton*, 489 U.S. 391; *accord, Amnesty Am.*, 361 F.3d at 130 ("*City of Canton* requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that . . . it actually caused the constitutional deprivation."

(quotation marks omitted)).

>>>2.    Analysis

Here, plaintiff's claim against the City is seemingly based on a failure to act and failure to train theory, although this is unclear as plaintiff's opposition papers do not address plaintiff's section 1983 claim against the City. *See generally* Dkt. Nos. 2, 48. Plaintiff has failed to provide any evidence, beyond bare allegations of conduct, including the failure to act, by defendant the City of Norwich that would satisfy *Monell*. *See generally* Dkt. No. 2, 48. In addition, during oral argument, plaintiff's counsel conceded that there is no basis to hold the City liable under section 1983, and consents to the dismissal of that remaining claim against the City.[9] Accordingly, I recommend that plaintiff's remaining claim against the City be dismissed.

## IV.    SUMMARY AND RECOMMENDATION

Plaintiff has identified material facts that are genuinely disputed and which go to the objective reasonableness of defendant Officer Clarke's conduct with regard to the excessive force claim and accompanying

---

[9]    Plaintiff does, however, contend that he should have been permitted to pursue his negligence claim against the City, and has preserved that argument for appeal following a final judgment in the action.

qualified immunity defense. Defendants' motion should therefore be denied to the extent it seeks dismissal of plaintiff's excessive force claim against Officer Clarke either on the merits or based on qualified immunity. Plaintiff, however, has not met his burden in responding to the portion of defendants' summary judgment motion addressing his *Monell* liability claim against the City of Norwich, and consents to the dismissal of plaintiff's section 1983 cause of action against that defendant.

Accordingly, it is hereby respectfully

ORDERED that the clerk of the court is respectfully directed to modify the court's records to change defendant Brandon M. Clark to "Brandon M. Clarke," and it is further respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 46) be GRANTED, in part, and that plaintiff's remaining claim against defendant City of Norwich be DISMISSED, but that the motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further hereby ORDERED, that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      March 1, 2019
            Syracuse, New York